IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| RANDALL NEAL HARVEY, | |
| Plaintiff, | CIVIL ACTION NO.: 2:17-cv-4 |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] | |
| Defendant. | |

**ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff contests the decision of Administrative Law Judge Richard Furcolo ("the ALJ" or "ALJ Furcolo") denying his claim for Supplemental Security Income. (Doc. 10.) Plaintiff urges the Court to reverse the ALJ's decision and award him benefits. (Id.) Defendant asserts that the Commissioner's decision should be affirmed. (Doc. 11.) For the reasons which follow, I **RECOMMEND** the Court **AFFIRM** the decision of the Commissioner. I also **RECOMMEND** that the Court **DIRECT** the Clerk of Court to enter the appropriate judgment of dismissal and to **CLOSE** this case.

**BACKGROUND**

On April 19, 2013, Plaintiff filed an application for Supplemental Security Income, alleging disability beginning December 31, 2015. (Doc. 8-2, p. 10.) After his claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On April 16, 2015, ALJ Furcolo conducted a video hearing at which Plaintiff, unrepresented by counsel or

---

[1] The current Acting Commissioner of Social Security is Nancy A. Berryhill. Accordingly, the Court **DIRECTS** the Clerk of Court to replace Defendant Carolyn W. Colvin with Nancy A. Berryhill upon the docket and record of this case.

other representative, appeared and testified in Brunswick, Georgia, while the ALJ presided in Savannah, Georgia. Kim E. Bennett, a vocational expert, also appeared at the hearing. (Id.) ALJ Furcolo found that Plaintiff was not disabled within the meaning of the Social Security Act (the "Act"), 42 U.S.C. §§ 301 *et seq.* (Id. at p. 17.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Id. at pp. 2–4.)

Plaintiff, born on March 30, 1952, was sixty-three (63) years old when ALJ Furcolo issued his final decision. (Id. at pp. 14, 17.) He has a high school education with additional vocational training in mechanical technology and currently cares for his elderly mother. (Id. at pp. 12, 36.) Plaintiff has past work experience as a self-employed pallet repairer and security guard. (Id. at pp. 40, 53–54.)

## DISCUSSION

### I.   The ALJ's Findings

Title II of the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act qualifies the definition of disability as follows:

> An individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2)(A).  Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person meets the definition of disability.  20 C.F.R. § 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987); see also 20 C.F.R. § 404.1520.

The first step determines if the claimant is engaged in "substantial gainful activity."  Id. § 416.920(a)(4)(i); Yuckert, 482 U.S. at 140.  If the claimant is engaged in substantial gainful activity, then benefits are immediately denied.  Id.  If the claimant is not engaged in any such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments as defined by the "severity regulation."  Id. § 416.920(a)(4)(ii), (c); Yuckert, 482 U.S. at 140–41.  If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to Step Three.  The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations ("the Regulations") and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity.  Id. § 416.920(a)(4)(iii), (d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004).  If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled.  Id. § 416.920(a)(4)(iii), (d); Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step.  At Step Four, a determination is made as to whether the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity ("RFC") to perform past relevant work.  Id. § 416.920(a)(4)(iv), (e), (f); Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013) (per curiam).  A claimant's RFC "is an assessment . . . of the claimant's remaining ability to do work despite [her] impairments."  Stone, 503 F. App'x at 693–94 (ellipsis in original) (quoting

Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).  If the claimant is unable to perform her past relevant work, the final step of the evaluation process determines whether she is able to adjust to other work in the national economy, considering her age, education, and work experience.  Phillips, 357 F.3d at 1239.  Disability benefits will be awarded only if the claimant is unable to perform other work.  Id. § 416.920(a)(4)(v), (g); Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed this sequential process to determine that Plaintiff has not engaged in substantial gainful activity since April 19, 2013, the supplemental income application date.[2]  (Doc. 8-2, p. 12.)  ALJ Furcolo found Plaintiff had the following medically determinable impairments: diabetes mellitus, degenerative joint disease of the bilateral shoulders, hypertension, plantar tendon tear, and acute myocardial infarction.  (Id. at p. 13.)  At Step Two, however, the ALJ determined that none of Plaintiff's impairments were considered "severe" under the "severity regulation."  (Id. (citing 20 C.F.R. § 416.921 *et seq*).)  Because none of Plaintiff's impairments, or combination of them, significantly limited (or were expected to significantly limit) his ability to perform basic work activities for twelve consecutive months, the ALJ did not proceed to the next steps and found Plaintiff was not disabled within the meaning of the Act.  (Id. at pp. 13–17.)

## II. Issues Presented

Plaintiff presents only one issue on appeal: Plaintiff contends that the ALJ's "severity" determination was not supported by substantial evidence.  (Doc. 10, pp. 20–28.)

## III. Standard of Review

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and

---

[2] Plaintiff is not eligible to receive Supplemental Security Income until the month after the application month.  See 20 C.F.R. § 416.335.  Thus, the appropriate start date for the ALJ's inquiry is the date on which Plaintiff applied for benefits.

4

whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1260 (11th Cir. 2007). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982), *overruling by statute on other grounds recognized by* Lane v. Astrue, No. 8:11-CV-345-T-27TGW, 2012 WL 292637, at *4 (M.D. Fla. Jan. 12, 2012).

### IV. Step Two Determination of Severe Impairments

Plaintiff contends his medically determinable impairments, as supported by substantial evidence, should have been found "severe" under the Regulations. (Doc. 10, pp. 20–21.) Plaintiff also contends the ALJ erred by not considering his multiple secondary osteoarthritis in the severity determination. (Id. at p. 21.) Plaintiff argues that all of his impairments, medically determinable or otherwise, taken together limit his life such that they should have been deemed "severe." (Id. at pp. 22–26.) Finally, Plaintiff asserts the ALJ erred by finding Plaintiff not fully credible, by not adequately accounting for his pain and functionality questionnaire responses, and by giving great weight to consultative examiner Dr. Brian Helmly. (Id. at pp. 26–28.)

Defendant argues that substantial evidence supports the ALJ's challenged severity determination. (Doc. 11, p. 5.) Specifically, Defendant contends the report of consultative examiner Dr. Hemly, the opinion of reviewing examiner Dr. Hassinger, treatment records following Plaintiff's acute myocardial infarction, and Plaintiff's reported activities all support the ALJ's determination that none of Plaintiff's impairments, alone or in combination, were "severe" under the Regulations. (Id. at pp. 6–8.) Thus, Defendant asserts the ALJ's decision should be affirmed. (Id. at p. 9.)

At Step Two, the ALJ must make a "threshold inquiry" as to the medical severity of the claimant's impairments. McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986); see 20 C.F.R. §§ 416.920(a)(4)(ii), (c); 416.920a(a); 416.923. A condition is severe if it "significantly limits claimant's physical or mental ability to do basic work activities." Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997); 20 C.F.R. §§ 416.921(a)–(b). Examples of "basic work activities" include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

6

      (2) Capacities for seeing, hearing, and speaking;
      (3) Understanding, carrying out, and remembering simple instructions;
      (4) Use of judgment;
      (5) Responding appropriately to supervision, co-workers and usual work situations; and
      (6) Dealing with changes in a routine work setting.

20 C.F.R. § 416.921(b).[3] Importantly, the severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986); see also Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005).

Substantial evidence supports the ALJ's determination that Plaintiff's diabetes mellitus, degenerative joint disease of the bilateral shoulders, hypertension, plantar tendon tear, and acute myocardial infarction, alone and in combination, were not "severe" impairments. ALJ Furcolo noted that, "[w]hile the claimant received periodic treatment for an assortment of impairments, no impairment more than minimally limited the claimant's functionality for greater than 12 months." (Doc. 8-2, p. 16.) In support of this finding, ALJ Furcolo provided abundant and specific citations to the record. (Id. at pp. 14–16.)

Reports from Dr. Helmly support the ALJ's finding. (Doc. 8-2, pp. 14, 16.) In June 2013, Plaintiff visited Dr. Helmly, complaining of joint pain, particularly in his shoulders and feet. (Doc. 8-7, p. 3.) Dr. Helmly determined that Plaintiff had "[n]o muscle asymmetry, atrophy, or involuntary movements [,] . . . . [had a n]ormal [gait/station], [and] ab[ility] to rise from a sitting position without assistance, stand on tiptoes, heels and tandem walk without problems. Claimant was able to bend and squat without difficulty." (Id. at p. 4.) Additionally, Dr. Helmly noted that Plaintiff's cardiovascular system had "[n]o thrill. Regular rate and rhythm. No systolic murmur heard. No diastolic murmur, gallop, click or rub. All distal pulses

---

[3] The Court cites to the Regulations that were in effect at the time of the ALJ's decision on July 24, 2015.

intact, full and equal." (Id.)  Ultimately, Dr. Helmly found that Plaintiff "should be able to sit, walk, and/or stand for a full workday, lift/carry objects without limitation and can hold a conversation, respond appropriately to questions, carry out and remember instructions." (Id. at p. 5.)

Plaintiff's other medical records also support the ALJ's finding and Dr. Helmly's opinion. With regard to Plaintiff's shoulder impairments, on December 3, 2013, Plaintiff received an MRI of his left shoulder. (Doc. 8-7, p. 56.) The MRI revealed that Plaintiff had a "[f]ull thickness incomplete tear of the anterior insertional fibers of the supraspinatus tendon" but had "no muscle atrophy and minimal tendon retraction." (Id.) Furthermore, the MRI noted that Plaintiff had "[m]ild acromioclavicular degenerative change" and "[m]ild subacromial and subdeltoid bursitis." (Id.) Plaintiff's follow up visit for this MRI resulted in no diagnoses or any other treatment notes. (Doc. 8-8, p. 77.) Plaintiff visited the clinic again in September 2014 and reported that he "feels like shoulders are doing better—has more [range of motion] [and] doesn't hurt as much." (Id. at p. 71.) Additionally, the clinician noted that Plaintiff's shoulder had "full extension" with "some restriction in ext[ernal] rotation." (Id.) Plaintiff was hospitalized in February 2015 because of chest pain. (Id. at p. 44.) His treatment notes from that time indicate that he had full range of motion at full strength in both his right and left arm. (Doc. 8-12, pp. 25, 35.) A musculoskeletal assessment conducted by the intensive care unit found Plaintiff to be "Within Defined Limits." (Id. at pp. 29–33.)

As to Plaintiff's heart and diabetic condition, Plaintiff has had several visits to clinics to follow up on these issues. In January 2014, Plaintiff visited a clinic because he thought his blood pressure was too low. (Doc. 8-8, p. 75.) Several visits later Plaintiff revealed he had been self-adjusting his blood pressure medication because he felt his blood pressure was too low. (Id. at p.

68.) Plaintiff's hospitalization notes for his February 2015 stay indicated that he had "moderate hypokinesis of the entire inferior and true lateral wall(s)" and "[e]jection fraction was estimated to be 50%" but "size was normal . . . . Wall thickness was normal." (Id. at p. 23.)  All other readings were normal. (Id.)  Plaintiff's treatment notes post-hospitalization reveal that Plaintiff felt normal, had no chest pain or shortness of breath, and had normal blood pressure, blood sugar, and A1C levels. (Id. at p. 67.)

Finally, Plaintiff's medical records as to his foot impairments support the ALJ's findings. Following Plaintiff's consultative examination with Dr. Helmly in June 2013, Plaintiff's medical record includes various clinical visits for his leg pain. (Doc. 8-7, pp. 14, 29, 36, 47.)  An August 2013 MRI revealed that Plaintiff had a plantar tendon tear. (Id. at pp. 14, 43.)  However, Plaintiff only received Motrin for his pain. (Id. at p. 43.)  Additionally, just twelve days after his MRI, Plaintiff reported that "his leg is feeling much better, not as much pain in [right] leg now." (Id. at p. 29.)  Accordingly, the only treatment Plaintiff received was an Ace bandage applied to his right leg. (Id.)  In November 2014, Plaintiff visited a podiatrist, Dr. Gary Grolemund, complaining of pain in both feet.  Dr. Grolemund diagnosed Plaintiff with hallux vargus, bunion, flat foot, and calcaneal spur. (Doc. 8-8, p. 2.)  However, Dr. Grolemund also found that Plaintiff had "[n]ormal muscle mass . . . and can heel and toe walk with ease, as well as arise from a seated position unassisted." (Id.)  Dr. Grolemund prescribed orthotics insoles and a topical gel to apply to his feet. (Id.)  When Plaintiff returned to Dr. Grolemund in December 2014, he continued to complain of foot pain but stated he was "not using it because of the precautions." (Id. at p. 3.)  Dr. Grolemund advised Plaintiff of the same recommended treatment plan. (Id.)

Plaintiff did not carry his burden to prove that these impairments significantly limited his ability to do basic work activities.  See Crayton, 120 F.3d at 1219.  In fact, substantial evidence

9

supports the ALJ's determination that they did not.  The ALJ noted that although Plaintiff was "evasive and not completely forthright at [the] hearing regarding his responsibilities in providing daily care for his very elderly mother, the evidence demonstrates that he does provide some level of care for her on a full-time, daily basis."  (Doc. 8-2, p. 16; see also id. at pp. 34–36, 42–43.) Additionally, the State Agency consultants found Plaintiff not disabled and to be "able to sit, walk, and/or stand for a full workday, lift/carry objects without limitation and can hold a conversation, respond appropriately to questions, carry out and remember instructions."  (Doc. 8-3, pp. 3, 6; see also id. at pp. 12, 16.)  Further, during the reconsideration level, the State Agency consultants again found Plaintiff's impairments to be non-severe.  (Id. at pp. 14–15.)  Simply put, while Plaintiff recites many impairments which he considers severe and disabling, (doc. 10), the mere existence of impairments does not make them "severe" or render one disabled within the meaning of the Act.  Moore, 405 F.3d at 1213 n.6.

Accordingly, Plaintiff could not meet his burden to show that his medically determinable impairments significantly limited his ability to perform basic work activities for 12 months or more.  See 42 U.S.C. § 423(d)(1)(A); Crayton, 120 F.3d at 1219.  Substantial evidence supports the ALJ's finding that Plaintiff's impairments were not severe and this enumeration of error is without merit.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **AFFIRM** the decision of the Commissioner.  I also **RECOMMEND** that the Court **DIRECT** the Clerk of Court to enter the appropriate judgment of dismissal and to **CLOSE** this case.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and

Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence. Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED** and **RECOMMENDED**, this 30th day of August, 2018.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA